UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21773-FAM

GUSTAVO PEREZ,

    Plaintiff,

v.

FLORIDA BEAUTY FLORA, INC., a Florida for Profit corporation, RONEN KOUBI, an individual, and RALPH MILMAN, an individual,

    Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants FLORIDA BEAUTY FLORA, INC. ("Florida Beauty"), RONEN KOUBI ("Mr. Koubi") and RALPH MILMAN ("Mr. Milman") (collectively referred to as "Defendants"), by and through undersigned counsel, hereby file this Motion for Summary Judgment and Incorporated Memorandum of Law pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rules 7.1 and 56.1, and in support states as follows:

**INTRODUCTION**

This action arises from a claim for recovery of overtime compensation under the Fair Labor Standard Act, 29 U.S.C. § 201, et seq. ("FLSA" or the "Act"). Plaintiff, GUSTAVO PEREZ, alleges that he was a non-exempt employee and that Defendants intentionally ignored the FLSA by failing to pay overtime when Plaintiff worked in excess of 40 hours in a week. [ECF No. 1].

Defendants seek summary judgment as to Plaintiff's exempt status from the FLSA under the executive exemption, the administrative exemption and the highly compensated employee

1

exemption. There is no genuine issue of material fact as to the application of the executive, administrative, and highly compensated employee exemptions and Defendants are therefore entitled to summary judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

Pursuant to Southern District of Florida Local Rule 56.1, the instant motion is accompanied by a separate and contemporaneously filed Statement of Material Facts (hereinafter referred to as "SMF").

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant may rely on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [to] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party demonstrates the absence of a genuine issue of material fact, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Only a disputed fact "that might affect the outcome of the suit" can preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the dispute must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Black v.*

*Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016). But, "an inference is not 'reasonable' and a dispute is not 'genuine' if it is based on conclusory allegations and speculation." *Id.*

## MEMORANDUM OF LAW

**I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF QUALIFIES AS AN EXEMPT ADMINISTRATIVE EMPLOYEE UNDER THE FLSA.**

The FLSA requires an employer to pay an employee for overtime pay if he or she works over forty (40) hours in a week. 29 U.S.C. § 207(a)(1) (2020). The Act, however, exempts from this requirement "any employee employed in a bona fide…administrative…capacity." 29 U.S.C. § 213 (a)(1). The Department of Labor ("DOL") has promulgated regulations and guidance that interprets and explains, respectively, this exemption. *See* 29 C.F.R. § 541.200, et seq. (2020); U.S. DEP'T OF LABOR, FACT SHEET # 17C: EXEMPTION FOR ADMINISTRATIVE EMPLOYEES UNDER THE FAIR LABOR STANDARDS ACT (FLSA), Sept. 2019, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fs17c_administrative.pdf [hereinafter Fact Sheet # 17C]. The DOL's regulations state that an employee qualifies as an administrative employee if:

1) The employee is compensated on a salary basis at a rate of at least $684 per week;

2) The employee's primary duty is the performance of office or non-manual work related to the management or general business operations of the employer or its customers; and

3) The employee's primary duty includes the exercise of discretion and independent judgment regarding matters of significance.

29 C.F.R. § 541.200(a) (2020). *See also* 29 C.F.R. §541.2 (2020) ("A job title alone is insufficient …. the exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.").

    **a.**    **Plaintiff Was Paid a Salary of at Least $684 Per Week.**

The administrative employee exemption requires that the employee receive a salary of at least $684 per week. 29 C.F.R. § 541.200(a)(1) (2020). An employee is considered salaried where he "regularly receives a predetermined amount of compensation that is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602 (2020). Even if an exempt employee is provided with additional compensation, such as based on performance, so long as the minimum guaranteed amount is at least $684 the exemption holds. 29 C.F.R. § 541.604 (2020). *See also Coppage v. Bradshaw*, 695 F. Supp. 2d 1361, 1365–66 (N.D. Ga. 2009).

It is undisputed that at no time during Plaintiff's employment during the relevant period[1] did Plaintiff receive a weekly salary of less than $2,000.00 per week. [SMF at ¶¶ 11–19]. In fact, Plaintiff's weekly salary was $2,115.38 in 2017, $2,337.27 in 2018, $2,407.21 in 2019, and $3,333.33 in 2020. [SMF at ¶¶ 11–19]. Plaintiff's salary did not vary based on how many hours he worked. Accordingly, Plaintiff's salary during the full relevant period meets the first prong of the administrative employee exemption.

    **b.**    **Plaintiff's Primary Duty was Management of the Floral Department at Florida Beauty.**

The second prong of the administrative employee exemption requires that the employee's "primary duty" be "work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2) (2020). The primary duty must be analyzed in relation to the character of the "employee's job as a whole" and must also work in a functional area of the business operations. *See* Fact Sheet # 17C, at 1–2.

---

[1] The relevant period is April 28, 2017 through April 28, 2020. [ECF No. 9]

Florida Beauty is a transportation, logistics, and warehouse distribution company providing services throughout the United States. [SMF at ¶ 8]. The undisputed evidence shows that Plaintiff, during the entire relevant time period, was primarily engaged in the management of the floral department at Florida Beauty, which included overseeing the customer service and sales functions of those departments and their staff. [SMF at ¶¶ 22; 26–32]. It also included receiving and resolving customer complaints, disputes, and issues. [SMF at ¶ 47]. *See also* Fact Sheet # 17C, at 2 (explaining that employee whose work is primarily "directly related to the management or general business operations of the employer's customers" qualifies for the administrative employee exemption). Throughout the relevant time period, Plaintiff would negotiate service rates with customers directly or through his sales staff and then advise Ari Afek, Director of Human Resources, to input the negotiated rates into the computer system. [SMF at ¶¶ 47–51]. That is because Mr. Afek was the Director with the ability to input the customer rates into the computer system. [SMF at ¶ 51].

It is undisputed that Plaintiff was in charge of managing the floral department during the relevant time period.

    **c.    While Managing the Floral Department's Customer Service and Sales Functions, Plaintiff Enjoyed Wide Discretion and Independent Judgment.**

The third prong of the administrative employee exemption requires that the exempt employee's primary duty "involve the exercise of discretion or independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2020). DOL regulations provides ten factors to consider in determining whether an employee exercises "discretion and independent judgment" such as:

    1.    whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

    2.    whether the employee carries out major assignments in conducting the operations of the business;
    3.    whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
    4.    whether the employee has authority to commit the employer in matters that have significant financial impact;
    5.    whether the employee has authority to waive or deviate from established policies and procedures without prior approval;
    6.    whether the employee has authority to negotiate and bind the company on significant matters;
    7.    whether the employee provides consultation or expert advice to management;
    8.    whether the employee is involved in planning long- or short-term business objectives;
    9.    whether the employee investigates and resolves matters of significance on behalf of management; and
    10.    whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (2020). *See also Viola v. Comprehensive Health Mgmt.*, Inc., 441 Fed. Appx. 660, 662–63 (11th Cir. 2011) (holding that not all of the factors in § 541.201(b) are required since "it is not necessary that an employee perform all of the functions listed in the regulations to qualify as exempt"). Also, "[t]he fact that his decision or action is subject to review by management is not dispositive." *Coppage*, 695 F. Supp. 2d at 1367.

    As discussed above, it is undisputed that Plaintiff managed the floral department for Florida Beauty, which included, by Plaintiff's own admission, handling the department's claims, sales, accounting, and customer service. [SMF at ¶ 52–53]. It is also undisputed that the floral department is a key business segment for Florida Beauty, which generates a substantial amount of its revenue and business. [SMF at ¶ 24].

    Plaintiff routinely received and handled claims from Florida Beauty customers and directly resolved them on behalf of Florida Beauty's management, he negotiated and set client rates, and oversaw and directly handled personnel matters within the floral department and provided

personnel decisions to the Directors and ownership group. [SMF at ¶¶ 31–43]. For example, when a Florida Beauty floral customer was offered a lower rate from a competitor, Plaintiff took it upon himself to speak directly to the customer to retain their business and recommended a competitive rate to Mr. Koubi, President of Florida Beauty, which was approved and applied for the customer. [SMF at ¶¶ 48–49].

Plaintiff's discretion and independent judgment is well documented on the record and not subject to dispute and, thus, the third and final prong of the administrative employee exemption is also met.

II. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF QUALIFIES AS AN EXEMPT EXECUTIVE EMPLOYEE UNDER THE FLSA.**

Similarly, the FLSA provides for an executive employee exemption that applies to "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213 (a)(1) (2020). The DOL's regulations and guidance on this exemption is similarly outlined in the Code of Federal Regulations and in Fact Sheet # 17B. *See* 29 C.F.R. § 541.100, et seq. (2020); U.S. DEP'T OF LABOR, FACT SHEET # 17B: EXEMPTION FOR EXECUTIVE EMPLOYEES UNDER THE FAIR LABOR STANDARDS ACT (FLSA), Sept. 2019, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fs17b_executive.pdf [hereinafter Fact Sheet # 17B]. The DOL's regulations state that an employee qualifies as an executive employee if:

1) The employee is compensated on a salary basis at a rate of at least $684 per week;
2) The employee's primary duty is management of the enterprise or a customarily recognized department or subdivision of the enterprise;

> 3) The employee customarily and regularly directs the work of two or more other employees; and
>
> 4) The employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (2020).

### a.   **Plaintiff Was Paid a Salary of at Least $684 Per Week.**

As discussed above in Section I(a), it is undisputed that Plaintiff was paid well over the $684 weekly minimum during the entire relevant period. Thus, the first prong of the executive employee exemption is met.

### b.   **Plaintiff's Primary Duty was Managing the Floral Department.**

The second prong of the executive employee exemption requires that the employee is primarily responsible for management, which *includes*:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102 (2020) (emphasis added). With respect to management of a department or function, the regulations explain that the applicable department "must have a permanent status and a continuing function" within the employer, and "[c]ontinuity of the same subordinate personnel is not essential to the existence of a recognized" department. 29 C.F.R. § 541.103 (2020). Further,

8

an exempt employee may have concurrent duties, for example an employee can both manage the work of other employees and also service customers or make sales himself without losing the exemption. 29 C.F.R. § 541.106 (2020) ("An exempt employee can also simultaneously direct the work of other employees and stock shelves.").

It is undisputed that during the entire relevant time period Plaintiff primarily managed the floral department at Florida Beauty. [SMF at ¶ 22]. In this capacity, Plaintiff was responsible for overseeing and directing the work of the customer service and sales functions of the floral department. [SMF at ¶¶ 27–28]. This is undisputed. For example, in introducing himself to a new Memphis-based manager for Florida Beauty in 2016, Plaintiff stated "welcome … ***My duties include managing flower department***, claims, sales, and accounting." [SMF at ¶ 52] (emphasis added). Plaintiff's role remained unchanged since 2015. [SMF at ¶ 22]. Plaintiff acknowledges this role and Florida Beauty's directors and owners heavily relied upon Plaintiff to carry out this function. [SMF at ¶ 33].

Plaintiff selected and recommended personnel for hiring and firing, which Plaintiff or Florida Beauty's ownership would act upon. [SMF at ¶¶ 33–34]. For example, Plaintiff selected and recommended new hires to the Director of Human Resources and also set the anticipated schedule for the new hires. [SMF at ¶ 34]. Plaintiff also made determinations to terminate employees that were not performing or demanded their transfer. [SMF at ¶¶ 3537]. For example, on September 17, 2018, Plaintiff demanded that employee Carlos Cardenas, who was also hired by Plaintiff, be moved to another department "ASAP. If not I will let him go." [SMF at ¶ 35–36]. In following up on September 24, 2018, Plaintiff tells upper management "[d]o you want to terminate Carlos or do I? I want Friday to be his last day." [SMF at ¶ 35–36]. As a result, Mr. Cardenas was removed from the sales department under Plaintiff, to the trucker safety / insurance

claims department, where he is currently employed. [SMF at ¶ 35–36]. In another instance, in response to truck drivers, who are independent contractors, making "serious mistakes" and having problems, Plaintiff advised Florida Beauty's ownership and the Director of Human Resources to "sit [the drivers] down for counseling prior to giving them any other load." [SMF at ¶ 36].

Plaintiff also managed the hours of work for the employees in handling customer service and sales for the flower department, while also contributing to setting their rate of pay. [SMF at ¶ 31]. *See also Coppage*, 695 F. Supp. 2d at 1367 (stating that "his decision or action [being] subject to review by management is not dispositive" when discussing the management aspect of the exemption). For example, Plaintiff directed that an employee he managed, Yudmila Gonzalez, receive a $1.00 raise and asked the Director of Human Resources that it be applied "on next pay" and as for another employee, Keren Pupo, Plaintiff states that "we are going to hold off to see if she returns from maternity leave." [SMF at ¶ 32]. Further, Plaintiff consistently signed as the Supervisor on his subordinate employees' leave of absence request forms. [SMF at ¶ 39].

Plaintiff also handled employee grievances and safety concerns. [SMF at ¶ 46]. For example, Plaintiff communicated to Florida Beauty's ownership that he was "getting complaints of allergies and sickness from the workers left in the main room… I need to get these workers moved or will be left with no one here." [SMF at ¶ 46]. In another instance, when there was an issue with a truck load, Plaintiff informed upper management and the Safety Department that he "had a talk with the crew and did not have a good attitude, stating the work is too hard and they do not have time to count. Explained to them the consequences. Silvio [Driver Payroll Manager] please do not pay for the stops and anything else they might get. Also charge them for what we are paying the other crew on the pick up." [SMF at ¶ 36]. Plaintiff further provided for the safety and security of Florida Beauty property or property under its care. *See* [SMF at ¶ 36] (stating to the

Safety Department and ownership that "[t]here is no reason [drivers] should be taking empty pallets we do not exchange with any of our customers.").

Plaintiff also directed and oversaw the enforcement of Florida Beauty's company policies with its employees. For example, Plaintiff notified dispatch and customer service company-wide that "[i]n order to cut down on claims *I will be enforcing our claim policy with very few exceptions*. In the outbound white boards *I wrote down a message to our drivers* in reference to this." [SMF at ¶ 45] (emphasis added).

As described above, based on Plaintiff's own admissions, Plaintiff's role within Florida Beauty during the relevant period was at all times managerial in nature. *Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164 (S.D. Fla. 2009) ("Cases applying 29 C.F.R. § 541.700 (2004) hold that assistant managers are exempt as long as they perform some management tasks" and "numerous courts have rejected [employee-Plaintiff's] post-hoc efforts to minimize the relative importance of managerial duties.") (internal citations omitted). Accordingly, there is no dispute of the material fact that Plaintiff's primary responsibilities during the relevant period was managerial in nature.

    c.    **Plaintiff Customarily and Regularly Directed the Work of Two or More Full Time Employees.**

An employee that qualifies as a bona fide executive employee subject to the exemption is also required to regularly manage and direct the work of two or more full time employees. 29 C.F.R. § 541.104 (2020). "'Customarily and regularly' is defined as '*a frequency that must be greater than occasional but which, of course, may be less than constant*.' 29 C.F.R. § 541.701. It includes 'work normally and recurrently performed every workweek,' but not 'isolated or one-time tasks.'" *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 60221 (N.D. Ala. Apr. 30, 2012) (emphasis added).

In his role managing Florida Beauty's floral department's sales and customer service functions, Plaintiff supervised customer service, sales staff, and drivers performing floral trucking. [SMF at ¶ 27]. As described above in Section II(b), Plaintiff readily admitted that he supervised Carlos Cardenas (whom he hired and had removed from his department), Yudmila Gonzalez, Gloria Ullmer, Keren Pupo, and various drivers trucking flowers who he disciplined or escalated to upper management to discipline. [SMF at ¶ 41]. This included managing the schedule of Yudmila, Gloria, and Keren, full-time employees. [SMF at ¶¶ 38–39; 41–42]. It also included directing for his employees to not be deducted for a lunch break where applicable, directing timeclock overrides and allowances for his department staff [SMF at ¶ 31].

Plaintiff also regularly managed and directed the work of Javier Ferrero during the entirety of the relevant time period. [SMF at ¶ 41]. Plaintiff's role also included making raise recommendations and signing vacation requests as the supervisor. [SMF at ¶ 39].

Given the record and Plaintiff's own admissions, consistently during, at least 2017 through the end of his employment with Florida Beauty, Plaintiff regularly managed and directed the work of two or more full time employees.

  **d.** **Plaintiff Regularly Exercised Authority on Change of Status of Other Florida Beauty Employees or Significant Weight was Given to Plaintiff's Recommendations.**

Lastly, an employee that qualifies as a bona fide executive employee subject to the exemption must have "the authority to hire or fire other employees" **or** the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4) (2020) (emphasis added).

To analyze whether and executive employee's suggestions or recommendations are given "particular weight", DOL's regulations provides various factors such as "whether it is part of the

employee'' job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105 (2020) (acknowledging that "particular weight" applies "even if a higher level manager's recommendations has more importance *and even if the employee does not have authority to make the ultimate decision as to the employee's change in status*") (emphasis added).

As discussed above in Section II(b), Plaintiff regularly made suggestions and recommendations on employees that he oversaw that were given significant weight by Florida Beauty's ownership. The hiring of Mr. Carlos Cardenas was made by Plaintiff. [SMF at ¶ 35]. Plaintiff performed a review of Mr. Cardenas while he was working in Plaintiff's department, and then repeatedly and forcefully suggested to the Director of Human Resources that Mr. Cardenas be transferred from Plaintiff's department or fired "ASAP." [SMF at ¶ 35] ("If you still have a spot open in Safety for [Carlos Cardenas], move him ASAP. If not I will let him go."). Ultimately as a result, Mr. Cardenas was transferred to the Safety / Insurance Claims department, where he is currently employed. [SMF at ¶ 36]. Plaintiff also regularly disciplined and recommended the docking of pay for truck drivers, or not using certain truck drivers, as a result of issues during their route, such as leaving boxes behind, causing damage, or being late on their route. [SMF at ¶ 36]. Plaintiff would regularly initiate any disciplinary actions against employees within his department, and his recommendations would be routinely followed by upper management. [SMF at ¶ 36–37].

Also discussed above in Section II(b), Plaintiff regularly reviewed and recommended pay raises to employees working within his department, such as Gloria Ullmer, Yudmila Gonzalez, and Keren Pupo. [SMF at ¶ 32] (asking $1.00 raises be put into effect by the Director of Human Resources). Plaintiff also recommended for truck driver bonuses. [SMF at ¶ 37]. For example,

13

Plaintiff acknowledged that he discussed giving his employee, Yudmila Gonzalez, a $1.00 raise and urged that it be given "this week" as she "started working on produce with Javier…so we do not have to fill in the position left vacant by Conitha." [SMF at ¶ 32–33].

Plaintiff's recommendations on hiring, firing, discipline, promotions / pay raises, hours of work, and other personnel issues within the floral department were given substantial weight by Florida Beauty's upper management / ownership since Plaintiff was personally present and the first line to assess the work of the employees within Plaintiff's department. [SMF at ¶ 33]. This is clear on the record and the fourth and final prong of the executive level exemption is met. Accordingly, Plaintiff is properly categorized as an executive employee exempted from the FLSA's overtime pay requirements.

### III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF QUALIFIES AS AN EXEMPT HIGHLY COMPENSATED EMPLOYEE UNDER THE FLSA.

Under the FLSA, employees that earn at least $107,432 in total annual compensation and perform any one or more of the exempt duties of an executive or administrative employee are exempt from the Act. 29 C.F.R. § 541.601 (2020). Generally, the year for annual compensation purposes is considered the 52-week calendar year, unless otherwise defined by an employer. 29 C.F.R. § 541.601(b)(2) (2020).

### a.   Plaintiff Was Paid an Annual Salary of Over $107,432 During the Relevant Period.

As discussed above in Section I(a), it is undisputed that Plaintiff was paid well over the $107,432 annual minimum during the entire relevant period. Since Florida Beauty did not define the applicable year, each calendar year during the relevant period applies. *See* 29 C.F.R. § 541.601(b)(2) (2020).

14

During 2017, Plaintiff was paid $110,000.02. [SMF at ¶ 11]. During 2018, Plaintiff was paid $121,538.47. [SMF at ¶ 13]. During 2019, Plaintiff was paid $130,175.00, which includes salary of $125,175.00 plus a $5,000.00 bonus. [SMF at ¶¶ 15–16]. *See* 29 C.F.R. § 541.601(b)(1) (2020) ("Total annual compensation may also include commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period."). During 2020, Plaintiff was employed for Florida Beauty for six weeks and earned $20,000.00, which is the equivalent of an annual salary of $173,333.33. [SMF at ¶¶ 18–19]. *See* 29 C.F.R. § 541.601(b)(3) (2020) ("An employee who does not work a full year … because the employee … ends the employment before the end of the year, may qualify for exemption under this section if the employee receives a pro rata portion of the minimum amount [$107,432], based upon the number of weeks that the employee will be or has been employed"). Thus, the first prong of the highly compensated employee exemption is met.

> **b.     Plaintiff Customarily and Regularly Performed At Least One of the Exempt Duties or Responsibilities of an Executive or Administrative Employee.**

The second prong of the highly compensated employee exemption is met where the employee regularly performs any one of the exempt duties or responsibilities of an executive or administrative employee. 29 C.F.R. § 541.601(a) (2020).

"The duties requirement is relaxed in the case of highly compensated employees because a 'high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties.'" *Coppage v. Bradshaw*, 695 F. Supp. 2d 1361, 1369–70 (N.D. Ga. 2009). (citing 29 C.F.R. § 541.601(c)). *See also Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 478 (S.D. NY 2008) ("Among other things, this exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties."). This exemption applies even if, for example, "the

15

employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under Section 541.100." 29 C.F.R. § 541.601(c) (2020).

As outlined above, it is undisputed that Plaintiff customarily and regularly performed at least one administrative or executive duty. At minimum, it is undisputed that Plaintiff managed at least two full-time employees within his department during the entire relevant period. [SMF at ¶ 41].

Plaintiff has admitted that he managed at least two other Florida Beauty employees as the Manager of the floral department. [SMF at ¶ 53]. For example, in a request for the Memorial Day schedule in 2017 for his staff sent by the Director of Human Resources, Plaintiff responded Gloria and Yudmila will work that day" and similarly in 2019 for Memorial Day, Plaintiff responded to a similar request by saying "Yudmila will be here." [SMF at ¶ 31]. Further, in 2018, Plaintiff seemed to admonish the Director of Human Resources for being "in this department [Flower Customer Service] talking with Gloria and Yudmila" about their hours and work schedule and stating "[w]hy would you be talking with them about overtime and work duties? If you have a problem with this you come to me…. Flower CSR is a very stressful job, the workers are getting frustrated…." [SMF at ¶ 42].

Beyond regularly managing and directing the work of two or more employees during the relevant time period, as discussed in detail *supra* in Section II(b), Plaintiff was indisputably primarily responsible for management of the floral department at Florida Beauty during the entirety of the relevant time period.

Accordingly, by Plaintiff's own repeated admissions he oversaw staff of at least 2 employees, and it is undisputed that he regularly managed and directed the work of at least 2 employees during the entire relevant period.

## CONCLUSION

The record evidence in this case conclusively shows that Plaintiff GUSTAVO PEREZ was properly classified by Defendants as an exempt employee under the FLSA under the administrative employee, executive employee, and the highly compensated employee exemptions under the Act. For the reasons set forth above, Defendants FLORIDA BEAUTY FLORA, INC., RONEN KOUBI, and RALPH MILMAN respectfully request that this Honorable Court grant this Motion and issue an order entering summary judgment against Plaintiff.

Dated: January 11, 2021

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Defendants*

By: s/ Ryan Clancy
Ryan Clancy, Esq.
Email: ryan@business-esq.com
Email: info@business-esq.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on Monday, January 11, 2021, I electronically filed the foregoing document via CM/ECF.

## SERVICE LIST

Lowell J. Kuvin, Esq.

Law Office of Lowell J. Kuvin
Florida Bar No. 53072
17 East Flagler Street, Suite 223
Miami, Florida 33131
lowell@kuvinlaw.com
legal@kuvinlaw.com
Tel.: 305.358.6800
Fax: 305.358.6808
*Attorney for Plaintiff*